**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROY ALAN O'GUINN,
          *Plaintiff-Appellant,*

v.

LOVELOCK CORRECTIONAL CENTER;
NEVADA DEPARTMEN OF
CORRECTIONS; NEVADA
DEPARTMENT OF CORRECTIONS
MEDICAL DIRECTOR; STATE OF
NEVADA; JACKIE CRAWFORD; E. K.
MCDANIEL,
          *Defendants-Appellees.*

No. 06-15972

D.C. No.
CV-05-00007-
ECR/VPC

OPINION

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, Jr., District Judge, Presiding

Argued and Submitted
May 16, 2007—San Francisco, California

Filed September 5, 2007

Before: Cynthia Holcomb Hall, Diarmuid F. O'Scannlain,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

11531

## COUNSEL

Brett W. Johnson, Rhonda Needham, Anne Bishop, Snell & Wilmer L.L.P., Phoenix, Arizona for the appellant.

Catherine Cortez Masto, Nevada Attorney General; Melanie A. Potter, Deputy Attorney General, Carson City, Nevada for the appellees.

## OPINION

IKUTA, Circuit Judge:

Roy Allen O'Guinn is a Nevada state prisoner who has sued prison officials claiming they denied him accommodation and treatment for his mental illness. The district court dismissed the suit pursuant to the Prison Litigation Reform Act ("PLRA"), as amended, 42 U.S.C. § 1997e *et seq.*, for O'Guinn's failure to exhaust administrative remedies prior to filing suit. O'Guinn appealed. We have jurisdiction under 28 U.S.C. § 1291.

To resolve this appeal, we must decide whether the PLRA requires prisoners to exhaust available administrative reme-

dies before bringing claims under the Americans With Disabilities Act ("ADA") and the Rehabilitation Act. We hold that it does and therefore affirm the district court.

I

O'Guinn is a prisoner at Lovelock Correctional Center, a Nevada Department of Corrections ("NDOC") prison. He has a history of mental illness, brain damage, and organic personality disorder, which in the past have required medical treatment.

On November 9, 2004, O'Guinn filed a complaint with the Department of Justice ("DOJ") alleging ADA and Rehabilitation Act violations based on the prison's alleged failure to provide adequate treatment for his mental disability. The complaint was filed on a form entitled "Title II of the Americans with Disabilities Act/Section 504 of the Rehabilitation Act of 1973 Complaint Form." The DOJ sought and received authorization from O'Guinn to investigate these complaints. It is unclear from the record whether the DOJ took any further action.

After filing his complaint with the DOJ, O'Guinn filed a pro se complaint in federal district court against the Nevada Department of Corrections and several other defendants (collectively "Defendants") on January 4, 2005. He used a pre-printed form, captioned "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983." He identified his single cause of action under count one as "Americans with Disabilities Act, 42 USC § 12101 et seq., and Rehabilitation Act 29 USC § 794 et seq." The complaint does not include a cause of action under § 1983. Under the jurisdiction paragraph he again identified these statutes and added "Not a civil rights action except as may be covered in the above statutes."

O'Guinn filed an amended complaint on January 13, 2005, again on NDOC's pre-printed § 1983 complaint form. Instead

of leaving the default jurisdictional statement under § 1983, O'Guinn wrote "Different: Rehab Act Title 29 U.S.C. § 794 et seq., and Americans with Disabilities Act, Title 42 U.S.C. § 12101, et. seq." As with the original complaint, O'Guinn listed only causes of action under the ADA and Rehabilitation Act. The district court *sua sponte* dismissed the amended complaint with leave to amend pursuant to 28 U.S.C. § 1915A, holding that O'Guinn had failed to plead his causes of action sufficiently.

On January 31, 2005, O'Guinn filed a second amended complaint, which is the operative complaint in this appeal. The second amended complaint, like the two prior complaints, used the form § 1983 complaint. As with the first two complaints, O'Guinn invoked federal jurisdiction based on the ADA and Rehabilitation Act, instead of on § 1983. He did not mention § 1983. The second amended complaint alleged that O'Guinn was denied participation in services, benefits, and programs solely on the basis of his disability and that he had been denied accommodations for his disability in violation of these statutes. O'Guinn attached his DOJ ADA/Rehabilitation Act complaint form to the second amended complaint. He also indicated that he had not exhausted the NDOC's grievance procedures, stating: "Grievance not applicable to ADA/Rehab Act and is not required under these acts."

Defendants moved to dismiss the second amended complaint on several grounds, including O'Guinn's failure to exhaust his administrative remedies. In response, O'Guinn argued that exhaustion was not required because prisoners bringing suit under the ADA do not have to exhaust prison remedies, and the NDOC's own administrative grievance process, Administrative Regulation 740, prohibits grievances pertaining to federal law. He also argued that if there were a federal exhaustion requirement, he met it by filing his complaint with the DOJ.

In her recommendation to the district court on November 14, 2005, the magistrate judge determined that O'Guinn had

filed his suit under § 1983 and had failed to exhaust administrative remedies before filing suit, as required by the PLRA. On March 27, 2006, the magistrate judge also determined, after an evidentiary hearing on the issue, that O'Guinn had failed to file NDOC grievances related to mental health treatment.

The district court adopted the magistrate's recommendation on March 28, 2006. The district court noted O'Guinn's argument that he exhausted his mental health treatment claims after he filed his lawsuit, but held that O'Guinn was required to file a new action to reflect this exhaustion. Accordingly, the district court dismissed O'Guinn's suit without prejudice. O'Guinn filed a timely notice of appeal.

II

Dismissals based on a prisoner's failure to exhaust remedies are reviewed de novo; factual findings are reviewed for clear error. *See Wyatt v. Terhune*, 315 F.3d 1108, 1117 (9th Cir. 2003). In ruling on a dismissal motion, a "court may look beyond the pleadings and decide disputed issues of fact. If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120 (internal citation omitted). We may affirm on any ground present in the record. *See Sherman v. Harbin* (*In re Harbin*), 486 F.3d 510, 520 (9th Cir. 2007).

III

O'Guinn's key argument is that the PLRA does not require exhaustion of claims arising under the ADA or Rehabilitation Act.[1] O'Guinn claims that the district court erred in character-

---

[1] O'Guinn also argues that the district court should have allowed him to amend his complaint to reflect that he exhausted his administrative remedies after filing his second amended complaint. We squarely rejected this argument in *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002) (per curiam).

izing his second amended complaint as bringing § 1983 claims, rather than ADA and Rehabilitation Act claims, and then compounded this error by dismissing his claims for failure to exhaust administrative remedies. As explained below, we agree that O'Guinn pleaded claims under the ADA and Rehabilitation Act rather than under § 1983, but conclude that the PLRA requires administrative exhaustion of ADA and Rehabilitation Act claims.

A

**[1]** The district court mischaracterized O'Guinn's complaint as arising under § 1983. O'Guinn's complaint clearly pleaded ADA and Rehabilitation Act statutory violations. As discussed above, each of O'Guinn's complaints stated that his claims were brought under the ADA and Rehabilitation Act and that he was not filing a civil rights complaint.

**[2]** Further, the factual assertions in the second amended complaint are directly related to establishing elements in his ADA and Rehabilitation Act causes of action. In order to state a claim under Title II of the ADA, a plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)). Similarly, to state a claim under the Rehabilitation Act, a plaintiff must allege "(1) he is an individual with a disability; (2) he is otherwise qualified to

receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

**[3]** In his second amended complaint, O'Guinn alleged that he was an individual with a mental health disability, he was qualified to receive the mental health services provided by NDOC, he was denied the benefits of the program solely on the basis of his mental illness, and NDOC received federal financial assistance. Conversely, the only indication that O'Guinn intended to file a § 1983 claim is the caption on the pre-printed form which O'Guinn claims the NDOC required him to use. Notably, O'Guinn's complaint does not allege that Defendants deprived him of a constitutional right while acting "under color" of state law, a necessary element of a § 1983 claim. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). As we held in *Bogovich v. Sandoval*, when a prisoner's complaint "asserts only, and details facts related to, potential ADA violations," the district court errs in characterizing the suit as a § 1983 claim. 189 F.3d 999, 1001 (9th Cir. 1999).

Defendants argue that we should construe the complaint as arising under § 1983 because O'Guinn can more readily obtain his desired remedies under § 1983 than under the ADA and Rehabilitation Act. But "courts should not undertake to infer in one cause of action when a complaint clearly states a claim under a different cause of action. '[T]he party who brings a suit is master to decide what law he will rely upon.' " *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 n.7 (1987)).

B

**[4]** Having determined that O'Guinn pleaded causes of action under the ADA and Rehabilitation Act rather than § 1983, we turn to the question whether the PLRA required O'Guinn to exhaust available administrative remedies before

bringing these claims. The plain language of the PLRA, as well as Supreme Court and Ninth Circuit precedent, lead us to conclude that exhaustion is required for ADA and Rehabilitation Act claims.

[5] The PLRA exhaustion provision, § 1997e(a), states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, *or any other Federal law*, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis added). Because the ADA and Rehabilitation Act are federal laws, the plain language of the PLRA requires that prisoners bringing an action under these federal statutes challenging prison conditions must first exhaust available administrative remedies. The parties do not dispute that O'Guinn's second amended complaint challenged prison conditions.

The Supreme Court has emphasized that the exhaustion requirement in the PLRA means what it says. Specifically, "exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2383 (2006). A prisoner must exhaust administrative remedies even when the prisoner's suit seeks monetary damages that are unavailable through the prison's grievance process, *see Booth v. Churner*, 532 U.S. 731, 734-35 (2001), and even with respect to suits alleging excessive force by prison officials, *see Porter v. Nussle*, 534 U.S. 516, 520 (2002).

[6] O'Guinn argues that *Bogovich v. Sandoval* creates an exception to the PLRA's exhaustion requirement for ADA claims. In *Bogovich*, we held that two prisoners could challenge certain parole board policies under the ADA, and were

not limited to filing a habeas corpus petition. 189 F.3d at 1004. By way of background, we noted that prisoners may not evade habeas exhaustion requirements by seeking non-habeas forms of relief and observed "[t]here is no exhaustion requirement for claims brought under Title II of the ADA." 189 F.3d at 1002. This is a correct statement of law regarding exhaustion of Title II claims outside of the PLRA context. *See Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1178 (9th Cir. 1999). However, *Bogovich* did not discuss the PLRA's exhaustion requirement, and in fact did not reference the PLRA at all. Therefore, *Bogovich* did not create an exception to the PLRA's exhaustion requirement for ADA claims.

**[7]** We recognize that neither Title II of the ADA nor section 504 of the Rehabilitation Act generally requires administrative exhaustion before filing suit. *See Zimmerman*, 170 F.3d at 1178. Yet nothing in the ADA or the Rehabilitation Act carves out an exception to the PLRA exhaustion requirement. On the other hand, the PLRA specifically prohibits suits "under section 1983 of this title, or any other Federal law," 42 U.S.C. § 1997e(a), absent exhaustion. *See Salgado v. Garcia*, 384 F.3d 769, 773-74 (9th Cir. 2004) ("[W]here there is no clear indication otherwise, a specific statute will not be controlled or nullified by a general one." (quotation marks omitted)). The Supreme Court has noted that in enacting the PLRA, Congress intended it to apply to all federal laws with respect to prisoner suits, with the intent that prison officials would have the first opportunity to address prison conditions. *See Porter*, 534 U.S. at 524-25. This congressional intent would be defeated if prisoners were able to bring federal suits directly in district court wherever a federal statute lacked an exhaustion provision. Given the clear indication of congressional intent in the PLRA, we interpret § 1997e(a) as requiring prisoners to exhaust prison administrative remedies for claims under Title II of the ADA and the Rehabilitation Act, notwithstanding the absence of a federal administrative exhaustion requirement in these statutes.

Accordingly, we hold that the plain language of § 1997e(a) and relevant Supreme Court authority require prisoners bringing ADA and Rehabilitation Act claims to exhaust those claims through available administrative remedies before filing suit. *Cf. Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005) (finding that a prisoner had "availed himself of the administrative process the state gave him" and holding § 1997e(a) did not require dismissal of his ADA claim). In so holding, we join the Sixth Circuit, which has similarly dismissed ADA claims for failure to satisfy the PLRA's exhaustion requirement. *See Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (per curiam).

IV

Having determined that O'Guinn was required to exhaust available administrative remedies before filing his ADA and Rehabilitation Act claims, we turn to the question whether he did so. O'Guinn alleges he satisfied the PLRA's exhaustion requirement through his repeated requests to move to the bottom bunk, or in the alternative, by filing the ADA/ Rehabilitation Act complaint form with the DOJ.

First, even liberally construing the grievances O'Guinn filed requesting a lower bunk due to poor balance resulting from a previous brain injury, we conclude that these lower-bunk claims are not equivalent to claims of denial of mental health treatment in violation of the ADA and Rehabilitation Act. After "scour[ing] the record for any indicia that plaintiff exhausted available remedies," the magistrate judge ruled that O'Guinn's complaints contained "no requests for treatment or any other documents that might be construed as complaints seeking mental health treatment in accordance with the [ADA] that were submitted to prison officials." The magistrate judge reiterated this conclusion after the evidentiary hearing, stating: "no requests for mental health treatment . . . were submitted to prison officials." The district court adopted the magistrate's conclusion, stating that

O'Guinn "did not exhaust his grievances with respect to the claims made in this case." Reviewing this conclusion for clear error, *see Wyatt*, 315 F.3d at 1120, we agree that O'Guinn did not exhaust his ADA and Rehabilitation Act claims here.

Second, O'Guinn asserts that the complaint he filed with the DOJ alleging denial of mental health treatment should satisfy § 1997e(a).[2] However, the Supreme Court has made clear that the PLRA requires a prisoner to exhaust the *prison's* internal grievance process. *See Jones*, 127 S. Ct. at 922 ("[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined . . . by the prison grievance process itself." (internal citations and quotation marks omitted)).

Relying on the statement in *Brown v. Valoff* that "awaiting the results of investigations triggered by the grievance process but outside of it can serve the purposes of the exhaustion requirement," 422 F.3d 926, 936 (9th Cir. 2005), O'Guinn argues that the DOJ's investigation of his claims satisfies the PLRA's exhaustion requirement. In that case, a California state prisoner took his excessive force complaint through the second level of the prison's four-level grievance process. *Id.* at 929-31. After the second level, the prison afforded Brown partial relief and turned Brown's grievance into a "Staff Complaint" to be investigated by the Office of Internal Affairs. *Id.* at 931. This sort of personnel investigation could not afford Brown any relief. *Id.* at 937-38. Thus, we determined that Brown had properly exhausted his remedies for purposes of the PLRA because he had no further "available" remedy. *Id.*

---

[2]As mentioned above, neither Title II of the ADA nor the Rehabilitation Act requires federal administrative exhaustion before bringing claims in court. *See Zimmerman*, 170 F.3d at 1178. O'Guinn bases his argument on the fact that federal regulations *permit* individuals who believe they have suffered discrimination based on a disability to file a complaint with the Department of Justice. *See, e.g.,* 28 C.F.R. 35.170(c).

at 940. In this context, *Brown*'s statement that an outside investigation "can serve the purposes of the exhaustion requirement," *id.* at 936, means that a prisoner has exhausted all available remedies when the prison administration's referral of a complaint for investigation ends a prisoner's appeal rights. As the DOJ investigation did not terminate O'Guinn's rights to pursue his ADA and Rehabilitation Act claims internally, the investigation did not serve to exhaust his administrative remedies.

V

[8] Because O'Guinn failed to exhaust his administrative remedies before filing his ADA and Rehabilitation Act claims, the district court correctly dismissed his lawsuit without prejudice.[3] We note, however, that because O'Guinn appears to have exhausted these claims after he filed his original complaint, he need only file a new suit to have his case heard in a federal forum.

**AFFIRMED**.

---

[3]On appeal, O'Guinn raises two additional arguments, namely that: 1) his misinterpretation of Administrative Regulation 740 amounts to a "special circumstance" excusing exhaustion; and 2) an inherent Eighth Amendment "emergency exception" applies because he is in urgent need of medical treatment. Because these arguments were not raised before the district court, they are waived. *See Scott v. Ross*, 140 F.3d 1275, 1283 (9th Cir. 1998).