**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IVAN TERRANCE SAPP,
　　　　　　*Plaintiff-Appellant,*

　　　　　　v.

D. KIMBRELL; DOUGLAS PETERSON;
P. VAN COR; C. CRAPOTTA,
　　　　　　*Defendants-Appellees.*

No. 05-15745

D.C. No.
CV-02-02576-FCD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, Senior District Judge, Presiding

Argued and Submitted
May 7, 2010—Pasadena, California

Filed September 27, 2010

Before: Betty B. Fletcher and Richard A. Paez,
Circuit Judges, and Edward R. Korman, District Judge.*

Opinion by Judge Paez

*The Honorable Edward R. Korman, Senior United States District
Judge, Eastern District of New York, sitting by designation.

**COUNSEL**

Randall R. Lee and Matthew D. Benedetto (argued), Wilmer Cutler Pickering Hale and Dorr LLP, Los Angeles, California, for plaintiff-appellant Ivan Terrance Sapp.

Edmund G. Brown, Jr., Attorney General; Rochelle C. East, Senior Assistant Attorney General; Monica N. Anderson, Supervising Deputy Attorney General; and Michelle L. Angus (argued), Deputy Attorney General, Sacramento, California, for defendants-appellees Kimbrell, Van Cor, and Peterson.

**OPINION**

PAEZ, Circuit Judge:

In 2002, Ivan Terrance Sapp, a California state prisoner, filed a series of administrative grievances seeking medical

care for an eye condition. He never exhausted these grievances, however, because a prison official screened them out for various reasons. Sapp ultimately filed this suit under 42 U.S.C. § 1983, which the district court dismissed because Sapp had not exhausted his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA").

In this appeal, we must decide whether a prison official's improper screening of an inmate's administrative appeals excuses the inmate's failure to exhaust under the PLRA and, if so, whether Sapp's appeals were improperly screened. We hold that, although improper screening may excuse a failure to satisfy the PLRA's exhaustion requirement, the facts here do not show that prison officials improperly screened out Sapp's administrative grievances. Accordingly, we affirm the dismissal of Sapp's lawsuit.

## I. Background

In 1989, Sapp suffered an eye injury in prison that continues to cause him problems. In 2002, while incarcerated at the California state prison in Sacramento, he sought medical care, including eyelid surgery, but it is unclear whether he ever received it. Sapp claims to have filed over twenty administrative appeals about the issue with the prison. In December 2002, Sapp filed this § 1983 suit in federal court alleging deliberate indifference to his medical needs and challenging related actions. In particular, Sapp alleged that defendant Douglas Peterson, a prison doctor, denied him needed medical treatment; that defendant D. Kimbrell, the prison's administrative appeals coordinator, improperly screened his grievances seeking medical care; and that defendant P. Van Cor, a prison official, denied him an "*Olson*" review[1] of his medical records. The district court dismissed Sapp's suit without prej-

---

[1]An *Olson* review is "an administrative procedure which allows an inmate to review his central file." *James v. Scribner*, No. CV 07-880-TUC-RCC, 2010 WL 2605634, *1 (E.D. Cal. June 28, 2010).

udice for failure to exhaust his administrative remedies, as required by the PLRA, 42 U.S.C. § 1997e(a).

Although Sapp did not exhaust his administrative remedies, he did pursue some administrative appeals before filing this suit. We first describe California prisons' grievance procedures and then detail the administrative grievances that Sapp pursued.

## A. California Prisons' Grievance Procedures

California regulations allow a prisoner to appeal any action or decision by a prison official that adversely affects the prisoner's welfare. Cal. Code Regs. tit. 15, § 3084.1(a). To exhaust a grievance, an inmate must pursue his appeal through four levels, one "informal" and three "formal." *Id.* §§ 3084.5, 3084.1(a). An inmate must file the initial grievance within 15 working days of the action being appealed, and he must file each administrative appeal within 15 working days of receiving an adverse decision at a lower level. *Id.* § 3084.6(c).

At the informal level, an inmate must seek to have the involved prison employee resolve the problem. *Id.* § 3084.5(a). If this is unsuccessful, the inmate must then fill out a "Form 602," the "Inmate/Parolee Appeal Form," describing the problem and action requested. *Id.* § 3084.2(a). An "appeals coordinator" at the prison "screen[s]" each appeal before forwarding it on for review on the merits. *Id.* § 3084.3(a). The appeals coordinator may reject, or "screen," an appeal for various reasons, including failure to comply with the 15-day time limit, incompleteness or omission of necessary supporting documents, or failure to attempt to resolve the grievance informally. *Id.* §§ 3084.3, 3084.6(c). When the appeals coordinator rejects an appeal, he must fill out a form that explains why the appeal is unacceptable and instructs the inmate on what he must do to qualify the appeal for processing. *Id.* § 3084.3(d). If it appears from the appeal

form that the prisoner has difficulty describing the problem in writing, the appeals coordinator must arrange an interview with the prisoner to help clarify or complete the appeal. *Id.* § 3084.3(b)(3). Once the appeals coordinator allows an appeal to go forward, the inmate must pursue it through three levels of formal review. *Id.* § 3084.5.

## B.  Sapp's Attempts to Exhaust

Although Sapp filed numerous grievances relating to his eye condition, none was ever considered on the merits.

First, in December 2001, Sapp mentioned his eye condition in a second-level appeal of a different grievance seeking care for a skin condition. Prison officials rejected this appeal on the ground that the eye issue was "new" and had to be submitted in a separate appeal.

Sapp then filed a first-level appeal regarding his eye condition in early June 2002. This appeal was screened for reasons not apparent on the record before us. Sapp again filed a first-level appeal on June 9, 2002, that explained that he had "been having great difficulty in obtaining adequate medical care" since arriving at the prison in July 2001. He explained that doctors had referred him to see an eye specialist at the University of California at Davis ("UC Davis"), but that "this issue continues to go unrecognized." He explained that he had "submitted medical slips to medical staff" and that the prison's medical staff were "aware of the issues." In the "Action Requested" box on the form, Sapp indicated that he sought to "recover from a critical problem" and that "the only way to remedy the situation is to continue filing 602s [appeal forms] and try to remedy the issue any way possible."

The next day, Kimbrell, the prison's appeals coordinator, screened out that appeal on the ground that Sapp had "not adequately completed the [602 form] or attached the proper documents." Kimbrell noted that "[a]nother appeal was

screened out and returned to you [five days earlier] on the same issue, it appears. Be specific about eye condition and action requested."

Eight days later, on June 18, 2002, Sapp visited the UC Davis Medical Center's Ophthalmology Department and received only an examination. Sapp then filed another inmate appeal on June 30, 2002, that described the problem as "a long delay in obtaining adequate medical treatment for an [sic] critical eye injury which occurred [in 1989, while incarcerated]." He explained that the medical records were in his prisoner file and that he was "having great difficulty in filing a[n] inmate 602 appeal to exhaust the issue." In the "Action Requested" box, Sapp indicated that he sought "treatment as soon as possible, because I need the eyelid surgery, and I may have developed an eye infection." He also appended a two-page description of the problem, including a hand-drawn diagram of his eye and an account of the events that led to his injury.

Two days later, on July 2, Kimbrell screened out this appeal, again because Sapp had not adequately completed the form or attached proper documents. This time, Kimbrell specifically instructed Sapp to attach his Health Care Request form (Form 7362) or to explain why the form was not available and to "[c]larify the issue, have you been treated at SAC [this facility] for this condition? If you have not recently requested treatment at SAC submit of [sic] CDC 7362 to the Clinic." Boilerplate text at the bottom of the form advised: "This screening action may not be appealed unless you allege that the above reason is inaccurate. In such case, please return this form to the Appeals Coordinator with the necessary information."

In response, Sapp filed a Health Care Services Request, Form 7362, on July 20 seeking "follow-up of UC Davis otho eye exam." Four days later, prison staff responded with a note indicating that Sapp would be "seen within the week or 2

weeks." The record does not indicate whether or when the medical staff actually saw Sapp. The record before us does not show that Sapp ever filed an administrative grievance alleging that prison medical staff failed to see him as promised.

On July 30, Sapp submitted a Reasonable Modification or Accommodation Request under the Americans with Disabilities Act seeking help pursuing his administrative remedies. Sapp described his disability as the "lack of knowledge to write out a 602 [appeal form] to suite [sic] the appeals coordinator's approval, no matter how clearly it is stated." Sapp explained that he had only a seventh grade education and asked for medical treatment. The prison ultimately denied this request on October 1.

On August 30, Kimbrell again screened out Sapp's June 30 appeal. This time, Kimbrell indicated that the appeal exceeded the 15-working-day time limit for inmate appeals. Kimbrell noted that Sapp was "personally interviewed" on August 29 and that he stated that this was an "old issue [he] appealed in 1990." Again, Kimbrell advised Sapp, "If you need medical treatment, submit a CDC 7362 [Health Care Services Request] to the Clinic."

In response, Sapp submitted Health Care Services Requests on September 9 and 23, seeking referral to an eye doctor and surgery on his left eye. It is unclear whether, or how, prison officials responded to these requests. In any event, Sapp never filed an administrative grievance about officials' failure to respond adequately to these requests.

On September 23, Sapp submitted a request for an *Olson* review of his medical records. Van Cor appears to have forwarded this request to the Medical Records Office sometime before October 21.

On November 18, 2002, the same day that Sapp signed his federal complaint in this case, Sapp filed an administrative

appeal grieving about the denial of an *Olson* review of his medical records and the repeated denial of his attempts to exhaust his appeals, explaining that he was "at risk with any health concerns." On December 2, he filed his complaint against the defendants in the Eastern District of California.

At the same time that he was attempting to pursue his administrative remedies, Sapp sought to raise his concerns through other avenues. He submitted two Consumer Complaint forms to the Medical Board of California claiming that prison medical staff were denying him care for his eye condition. In addition, he alerted others about what he perceived as Kimbrell's improper screening of his appeals in letters that he wrote to the California Inspector General and to the warden. The Inspector General declined to investigate, and the warden informed Sapp that, if he disagreed with the screenings, he could "provide a written explanation as to why your appeal should qualify for processing." In addition, the warden advised him that he could file a "staff complaint" if he perceived that he was the victim of discrimination.

During the same time frame as Sapp filed his appeals regarding his eye condition, he submitted Health Care Services Requests about other conditions. He also successfully exhausted a grievance regarding medical care for a skin condition in June 2002.

## C.   *District Court Proceedings*

Sapp filed this § 1983 suit pro se against Peterson, Kimbrell, Van Cor, and a fourth defendant, Dr. Crapotta, in December 2002. Sapp alleged that Peterson, a prison doctor, denied him needed medical treatment; that Kimbrell, the prison's appeals coordinator, improperly screened his grievances seeking medical care; that Van Cor, a prison official, denied him an *Olson* review of his medical records; and that Crapotta, another doctor, also had denied him medical care. The district court dismissed the claims against Crapotta for failure

to serve him, and the remaining defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b).

The assigned magistrate judge issued proposed Findings and Recommendations recommending dismissal of the claims against the remaining defendants for failure to exhaust as required by the PLRA. The magistrate judge concluded that the alleged improper screening of Sapp's administrative appeals did not prevent him from exhausting because, even if his forms had not been screened out, they would not have sufficed to exhaust his claims. In particular, the magistrate judge noted that, before filing this suit, Sapp never submitted any grievance or appeal regarding the improper screening or the denial of an *Olson* review of his records. Although Sapp had filed grievances regarding the denial of medical treatment, the magistrate judge concluded that these grievances would not have sufficed to exhaust his claims against Peterson because they did not "mention defendant Peterson by name or suggest that defendant Peterson was responsible for the alleged inadequate treatment or delays." Although Sapp's November 18, 2002, appeals form named Peterson, that appeal was not exhausted before the suit was filed.

The district judge adopted the magistrate judge's proposed Findings and Recommendations in full and dismissed Sapp's claims without prejudice. Sapp timely appealed to this court. After holding the case in abeyance pending our decision on remand in *Ngo v. Woodford*, 539 F.3d 1108 (9th Cir. 2008), we appointed pro bono counsel for Sapp.

## II.   Jurisdiction and Standard of Review

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's dismissal based on Sapp's failure to exhaust. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007). In deciding a motion to dismiss for failure to exhaust, a court may "look beyond the

pleadings and decide disputed issues of fact." *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). We review the district court's factual findings for clear error. *O'Guinn*, 502 F.3d at 1059.

## III.  Discussion

**[1]** The PLRA requires a prisoner to exhaust his administrative remedies before filing a lawsuit concerning prison conditions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The Supreme Court has held that this exhaustion requirement demands "proper" exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). To "proper[ly]" exhaust, a prisoner must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

Sapp acknowledges that he failed to properly exhaust his claims, but contends that we should nonetheless permit his suit to go forward for two reasons. First, Sapp contends that the PLRA requires exhaustion only of those administrative remedies that are "available," and that the improper screening of his appeals rendered administrative remedies effectively unavailable to him. Second, Sapp urges us to recognize, and apply to him, an equitable exception to the PLRA's exhaustion requirement where a prisoner's special circumstances justify non-compliance with administrative regulations. We address each contention in turn.

## A.  Effectively Unavailable Remedies

### 1

**[2]** The PLRA requires that an inmate exhaust only those administrative remedies "as are available." 42 U.S.C. § 1997e(a). We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies "effectively unavailable." *See Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010).

In *Nunez v. Duncan*, we held that a prisoner's failure to exhaust was excused where he "took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault but by the Warden's mistake." *Id.* at 1224. There, the prisoner, Nunez, had filed an administrative grievance alleging that he had been strip searched in violation of his Fourth Amendment rights. *Id.* at 1220. When prison officials responded to his grievance by saying that the search was conducted pursuant to prison regulations, Nunez appealed to the next level and, in his appeal, asked for a citation to the relevant regulation. *Id.* The warden construed the grievance as merely a request for the regulation and accordingly responded with the citation. *Id.* Nunez then sought to get a copy of the regulation by going to the law library, and then, when the regulation was not available there, by filing a total of four grievances, a Freedom of Information Act (FOIA) request, and four letters appealing the FOIA denial. *Id.* at 1220-21. He never received a copy of the regulation because, as it turns out, the warden had given him an incorrect citation to a regulation that was "restricted" from inmates. *Id.* Finally, after many months of unsuccessful attempts to obtain the regulation, the inmate filed the next-level appeal of his initial grievance challenging the search. *Id.* at 1221. That appeal and the following final-level appeal were rejected as untimely. *Id.*

We excused Nunez's failure to exhaust his administrative remedies within the prescribed time limits because Nunez

"could not reasonably be expected to exhaust his administrative remedies without the [regulation] . . . , and because Nunez timely took reasonable and appropriate steps to obtain it." *Id.* at 1225. Nunez reasonably believed in good faith, based on the warden's response to his early appeal, that the regulation was necessary, not merely useful, to prepare his appeal. *Id.* at 1225-26. Because the warden's mistake in providing the incorrect citation thus "rendered Nunez's administrative remedies effectively unavailable," we excused Nunez's failure to exhaust. *Id.* at 1226.

As we acknowledged in *Nunez*, our sister circuits have similarly excused prisoners' failures to exhaust where administrative remedies were effectively unavailable. *Id.* at 1224. The Seventh and Eighth Circuits have held that administrative remedies are not "available," and exhaustion is therefore not required, where prison officials refuse to give a prisoner the forms necessary to file an administrative grievance. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 738, 740 (8th Cir. 2001). The Seventh Circuit similarly has held that prison officials' failure to respond to a properly filed grievance makes remedies "unavailable" and therefore excuses a failure to exhaust. *See Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006). The Third Circuit has held that exhaustion was excused where guards erroneously informed an inmate that he had to wait until an investigation was complete before filing a grievance. *See Brown v. Croak*, 312 F.3d 109, 111-12 (3d Cir. 2002). And several circuits have held that prison officials' threats of retaliation can render administrative remedies effectively unavailable such that a prisoner need not exhaust them. *See Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008); *Macias v. Zenk*, 495 F.3d 37, 45 (2d Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 685-86 (7th Cir. 2006).

**[3]** Consistent with these precedents and with our decision in *Nunez*, we hold that improper screening of an inmate's administrative grievances renders administrative remedies

"effectively unavailable" such that exhaustion is not required under the PLRA. If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable.

Recognizing an exception to the PLRA's exhaustion requirement where prison officials improperly screen an inmate's administrative appeals comports with, and indeed promotes, the requirement's purposes. As the Supreme Court has explained, administrative exhaustion serves two purposes. First, "[e]xhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court.' " *Ngo*, 548 U.S. at 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "exhaustion promotes efficiency" by allowing claims to "be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," by sometimes "convinc[ing] the losing party not to pursue the matter in federal court," and by "produc[ing] a useful record for subsequent judicial consideration" in cases where the claim does eventually reach federal court. *Id.* (internal quotation marks omitted). If inmates did not pursue administrative remedies, these benefits would not be realized. Thus, to promote these benefits, the PLRA makes exhaustion a prerequisite to suit so that inmates have an incentive to pursue administrative proceedings that they might otherwise prefer to skip. *See id.* at 90.

**[4]** Just as the PLRA promotes the benefits of exhaustion in this way, the exception we recognize today promotes exhaustion's benefits by removing any incentive prison officials might otherwise have to avoid meaningfully considering inmates' grievances by screening them for improper reasons. Excusing a failure to exhaust when prison officials improperly screen an inmate's administrative appeals helps ensure that prison officials will consider and resolve grievances internally and helps encourage use of administrative proceedings in

which a record can be developed that will improve the quality of decision-making in any eventual lawsuit. At the same time, this exception does not alter prisoners' incentive to pursue administrative remedies to the extent possible.

**2**

**[5]** Having recognized an exception to the PLRA's exhaustion requirement where a prison official renders administrative remedies effectively unavailable by improperly screening a prisoner's grievances, we must next determine whether Sapp falls within this exception. To fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The California regulations require only that an inmate "describe the problem and the action requested." Cal. Code Regs. tit. 15, § 3084.2(a). Where, as here, a prison's regulations are "incomplete as to the factual specificity [required in an inmate's grievance], a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (internal quotation marks omitted).

**[6]** Sapp pursues three claims against three defendants in this suit. He alleges that Peterson denied him needed medical

treatment for his eye condition; that Van Cor denied him an *Olson* review of his medical records; and that Kimbrell improperly screened his grievances seeking medical care. We conclude that Sapp's grievances would have sufficed to exhaust only the claim against Peterson.

Sapp's grievances alerted the prison to the nature of his complaint regarding medical treatment for his eye condition. In his grievances, Sapp explained that he was having trouble getting medical treatment and that he may have developed an eye infection, and he requested eyelid surgery and a follow-up appointment with a doctor at UC Davis. Further, contrary to the district court's conclusion, Sapp was not required to identify Peterson by name to exhaust the grievance against him. Neither the PLRA itself nor the California regulations require an inmate to identify responsible parties or otherwise to signal who ultimately may be sued. *See Jones*, 549 U.S. at 217 ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement."). Sapp's grievances therefore would have sufficed to exhaust his claim against Peterson for the denial of adequate medical treatment.

By contrast, no grievance that was screened—properly or improperly—would have sufficed to exhaust Sapp's claim against Van Cor for failing to give him an *Olson* review of his medical records. The grievances that Sapp alleges were improperly screened did not mention the denial of an *Olson* review at all. Although Sapp filed a substantively sufficient administrative appeal regarding this problem on November 18, 2002, he did not even wait for a response before pursuing this suit—indeed, he signed his federal complaint on the same day he filed that appeal. Sapp therefore cannot establish that any improper screening prevented him from exhausting this grievance, and he accordingly cannot pursue his *Olson* review claim against Van Cor.

Sapp's screened grievances similarly would not have sufficed to exhaust his claim against Kimbrell for improper

screening of his administrative appeals. Again, Sapp first mentioned this problem in the November 18 grievance that he did not even attempt to exhaust before filing this suit. Thus, to the extent that Sapp seeks to pursue a freestanding claim against Kimbrell for improperly screening his appeals, he cannot because he did not attempt to pursue administrative remedies for this problem before filing this federal suit.[2]

Thus, Sapp filed administrative grievances that would have sufficed to exhaust only his inadequate medical care claim against Peterson. We accordingly must next determine whether the grievances raising that claim were screened for improper reasons.

[7] On the record before us, it appears that Sapp's administrative grievances about medical care for his eye condition were effectively screened out five times. We consider each screening in turn. First, prison officials declined to consider a complaint about Sapp's eye condition that he raised for the first time in a second-level appeal about medical care for a skin condition. There, officials explained that the eye issue had to be raised in a separate appeal, starting at the first level. This screening was proper; an inmate must first present a complaint at the first level of the administrative process. *See* Cal. Code Regs. tit. 15, § 3084.5.

Next, officials screened out a first-level appeal about Sapp's eye condition for an unknown reason in early June 2002. Because Sapp does not even mention this appeal in his briefs, we assume that he does not contend that it was improperly screened.

A few days later, Sapp filed an appeal indicating that he was having "great difficulty" obtaining medical care and

[2]We do not, however, mean to suggest that an inmate must attempt to exhaust a grievance about any improper screening in order for improper screening to excuse a failure to exhaust other claims.

explaining that prison staff had not followed up on a referral to see an eye specialist at UC Davis. His appeal also noted that he was "unable to recover in malpractice." In the "Action Requested" box, Sapp explained that he sought to "recover from a critical problem where a long ongoing denial of adequate medical care and malpractice which took place in prison. The issues are so disturbing and complex that the only way to remedy the situation is to continue filing 602's and try to remedy the issue any way possible. 'Medical staff here are aware of the issues.' " Kimbrell screened out this appeal, telling Sapp to "[b]e specific about eye condition and action requested." This screening also was proper, as the regulations require inmates to "describe the . . . action requested." *Id.* § 3084.2(a). Although Sapp's grievance may have implied that he wanted to see any eye specialist, Sapp indicated in the "Action Requested" box that he wanted to "recover from a critical problem" involving malpractice. Given the mixed messages in Sapp's grievance, it was appropriate for the screener to seek clarification of the problem for which Sapp sought redress.

About a week after that appeal was rejected, Sapp visited a doctor at the UC Davis Ophthalmology Department. Approximately two weeks later, on June 30, 2002, Sapp submitted an administrative grievance that contained a detailed description of the history and nature of his eye injury. In the "Action Requested" box, Sapp wrote, "I'm requesting treatment as soon as possible, because I need the eyelid surgery, and I may have developed an eye infection. Plus the doctor seems to know what to do as far as my eyelids. The issues that lead [sic] up to the damage are disturbing and I have been diligent in tr[y]ing to remedy the situation." Two days later, Kimbrell screened out this appeal, this time because Sapp had not attached a Health Care Request Form showing that he had sought, and been denied, medical treatment. Kimbrell further explained, "Clarify the issue, have you been treated at SAC [this prison] for this condition? If you have not recently requested treatment at SAC submit of [sic] CDC 7362 [Health

Care Request form] to the Clinic." This screening was also proper. The regulations allow an appeal to be rejected if "necessary supporting documents are not attached." *Id.* § 3084.3(c)(5). Sapp did not include a copy of a Health Care Request form indicating that he had tried to obtain medical care through the proper channels. Nor did Sapp contest the screening decision by returning the form "with the necessary information"—in this case, a 7362 Health Care Request form showing that he had sought, and been denied, medical care— as boilerplate text at the bottom of the screening form advised him he could do. Importantly, the screening did not preclude Sapp from getting medical care. To the contrary, it instructed him on how to get it: by submitting a CDC 7362 form to the clinic.

More than two weeks later, on July 20, Sapp submitted a 7362 form requesting a follow-up appointment with the ophthalmologist at UC Davis. Although the record does not reveal whether or how prison officials responded to this request, Sapp never filed a grievance about the officials' failure to respond adequately to this request.

On August 30, Kimbrell again rejected the appeal that Sapp had submitted on June 30, this time for failure to comply with the 15-day time limit.[3] On the screening form, Kimbrell explained that a prison official had personally interviewed Sapp the day before, and that Sapp had indicated that this was an "old issue" that he had appealed in 1990. This screening was also proper. The form indicates that prison officials, consistent with the regulations, recognized that Sapp appeared to have difficulty explaining his complaint in writing and accordingly had interviewed him in person to clarify the basis of the grievance. *See id.* § 3084.3(b)(3) (requiring an interview when "an appeal indicates the appellant has difficulty

---

[3]Sapp claims that he did not resubmit his June 30 appeal form, so it is unclear why Kimbrell rejected this form a second time. Why Kimbrell considered this appeal again, however, is irrelevant to our analysis.

describing the problem in writing"). In this interview, Sapp apparently explained that he sought to appeal the inadequate medical care he had received in 1990 when his eye was first injured in prison. If this were his complaint, he did indeed miss the 15-day deadline. Importantly, however, Kimbrell also acknowledged that Sapp might be seeking current medical treatment and again advised him on how to get it, noting at the bottom of the form, "If you need medical treatment, submit a CDC 7362 to the Clinic."

**[8]** Thus, all of Sapp's administrative appeals were screened for proper reasons. Administrative remedies were accordingly "available," and Sapp was required to exhaust them.

In reaching this conclusion, we do not foreclose the possibility that exhaustion might also be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative remedies are effectively unavailable. Such an excuse is not available here, however, because, despite the repeated screenings, Sapp could have no *reasonable* belief that administrative remedies were effectively unavailable. Kimbrell specifically instructed Sapp on how to seek medical care, and on how to appeal any denial of care, but Sapp did not follow those instructions.

We further note that nothing in the district court record suggests that the prison had created draconian procedural requirements that would "trip[ ] up all but the most skillful prisoners"—which might also render administrative remedies effectively unavailable so as to excuse a failure to exhaust. *See Ngo*, 548 U.S. at 102 (leaving open the possibility that an exception to the exhaustion requirement might exist in such circumstances). Sapp had a clear avenue to follow to receive medical care or to exhaust his remedies if he did not receive the desired care. First, he could have filed a 7362 Health Care Request form, as Kimbrell suggested he do. If prison officials

did not respond, or did not provide the needed care, he could have filed a grievance about the denial of care, and appended the form showing that he had requested the care in accordance with prison procedures. Then, he could have pursued that grievance through the full administrative appeals process. Nothing in the record indicates that these apparently straight-forward procedures "trip[ ] up" ordinary inmates. To the contrary, Sapp has proven his own ability to navigate them, as he successfully exhausted a grievance about medical care for a skin condition around the same time as he pursued his appeals about his eye condition.

**[9]** Because Sapp's grievances were properly screened, because he had no reasonable good faith belief that administrative remedies were effectively unavailable, and because the prison's administrative grievance regime was not so complex as to trip up most prisoners, administrative remedies were available within the meaning of the PLRA, and Sapp was accordingly required to exhaust them.

## B. *Equitable Exception to Exhaustion*

We next consider whether, notwithstanding the availability of administrative remedies, Sapp's special circumstances entitle him to an equitable exception to the PLRA's exhaustion requirement. Although Sapp does not precisely articulate what equitable exception would apply to him, he suggests that his significant difficulty in following the grievance process, his reasonable belief that he could not pursue the grievance process any further, his limited education, and the fact that he did not deliberately bypass the administrative scheme warrant an equitable exception here.

**[10]** We need not decide here whether such circumstances might warrant an equitable exception to the PLRA's exhaustion requirement, however, because Sapp would not qualify for it. Although Sapp's request for a reasonable accommodation to help him satisfactorily complete an administrative

grievance form and his many attempts to pursue his complaint outside of the prison's administrative grievance process—through letters to the Medical Board of California, the warden, and the California Inspector General—suggest that Sapp did believe in good faith that he could not pursue the administrative grievance process any further, that subjective belief was not reasonable, as explained above. The procedures for obtaining medical care were clear: file a 7362 Health Care Request form, and then file an administrative grievance if officials failed to respond. Kimbrell specifically advised Sapp to submit a 7362 form if he sought medical care. Although Sapp filed several such forms, he never followed up by filing a grievance about prison officials' failure to respond adequately to those requests. Because he never even attempted to file any such grievance, he could not have reasonably believed that he could not pursue the administrative appeals process any further.

**[11]** We therefore decline to excuse Sapp's failure to exhaust under the equitable exception he proposes.

## IV.  Conclusion

We hold that administrative remedies are "effectively unavailable"—and that the PLRA's exhaustion requirement is therefore excused—where prison officials improperly screen a prisoner's grievance or grievances that would have sufficed to exhaust the claim that the prisoner seeks to pursue in federal court. Nonetheless, we conclude that Sapp's failure to exhaust is not excused because prison officials did not improperly screen any grievances that would have sufficed to exhaust his claims. We further conclude that Sapp is not entitled to any equitable exception to the PLRA's exhaustion requirement. We accordingly affirm the district court's order dismissing Sapp's claims without prejudice.

**AFFIRMED.**