# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN ROBERTO ALBINO,
      *Plaintiff-Appellant,*

v.

LEE BACA, Los Angeles County
Sheriff; LOS ANGELES COUNTY,
      *Defendants-Appellees.*

No. 10-55702

D.C. No.
2:08-cv-03790-
GAF-MLG

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
July 12, 2012—Pasadena, California

Filed September 21, 2012

Before: Ronald Lee Gilman,* Richard C. Tallman, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith;
Dissent by Judge Gilman

*The Honorable Ronald Lee Gilman, Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

**COUNSEL**

Andrea R. St. Julian, San Diego, California, for the plaintiff-appellant.

Christian E. Foy, Nagy and James C. Jardin (argued), Collins Collins Muir + Stewart, LLP, South Pasadena, California, for the defendant-appellee.

**OPINION**

N.R. Smith, Circuit Judge:

An inmate's lack of awareness of a correctional institution's grievance procedure does not make the administrative remedy "unavailable" for purposes of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), unless the inmate meets his or her burden of proving the grievance procedure to be unknowable. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996); *Goebert v. Lee Cnty.*, 510

F.3d 1312, 1322-24 (11th Cir. 2007). Because Albino has not met his burden of proof, we affirm the district court's grant of summary judgment.

## I.   BACKGROUND

### A.   Facts

No party disputes that, during all relevant periods at issue in this case, the Los Angeles County jails had a grievance procedure outlined in the Custody Division Manual § 5-12/010.00. According to the grievance procedure, inmates could file grievances (or complaints) regarding the conditions of confinement, including grievances related to classifications. All inmates were permitted to submit a written complaint; formal Inmate Complaint Forms were supplied to facilitate complaint filings. Each housing unit in the jail was required to have an adequate supply of Inmate Complaint Forms, and inmates were required to have unrestricted access to these forms. However, inmates were not required to use the formal Inmate Complaint Forms; they could make a complaint on any medium as long as it was written. Further, each housing area also maintained a locked repository box accessible to inmates so that they could deposit their written complaints unhindered.

On May 11, 2006, Juan Albino was arrested for rape and incarcerated in the Los Angeles County Sheriff's Department's main jail ("LASD Jail" or the "jail"). Upon arriving at the LASD Jail, Albino was booked into the jail. As part of that processing, jail staff determine the appropriate custody and security level classification for inmates based on a number of factors, including the nature of their charge. After evaluation of the factors for Albino, especially Albino's charge of rape, Albino was assigned a custody and security level consistent with placing him with the general inmate population.[1]

---

[1]Albino was not charged under California Penal Code § 288 (lewd and lascivious acts with a minor). Therefore, it is undisputed that Albino did not require protective custody under Custody Division Manual § 5-02/060.00.

After he was assigned to the general population, Albino alleges that he orally asked to be placed in protective custody. However, sheriff's deputies refused and instead assigned him to the general population, consistent with the custody and security level classification calculated during processing.

In June 2006, Albino claims that he was physically assaulted and raped by fellow inmates after the inmates were allegedly informed by deputies that Albino was a sex offender. Albino was taken to the county hospital for treatment of the injuries he sustained. After returning from the hospital, Albino claims to have again orally asked for protective custody. Though his request was rejected, deputies told Albino to contact his public defender for assistance (Albino alleges specifically that the deputies stated, "it is your attorneys [sic] job to protect [you]"). However, without any written request from Albino or his attorney, the jail relocated him to another housing location for his safety.

Albino alleges that he was subsequently assaulted on two separate occasions, once in July 2006 and once in September 2006. He acknowledges that he was taken to the jail clinic for treatment after each of these incidents. Albino claims to have orally asked for protective custody after each incident. While the oral requests were denied, he was again relocated to a different housing unit for his safety after the July 2006 incident.

The record includes incident reports created by LASD Jail personnel for the June and July incidents. The incident reports indicate that Albino was rehoused for his safety, and the reports provide no indication that Albino was dissatisfied with this action. There is no evidence that Albino filed (or made any effort to file) a written request for protective custody or any sort of written complaint. Instead, Albino made only oral requests for protective custody, and jail staff directed him to talk to his public defender. No evidence suggests he ever talked to his public defender about protective custody or complaining of his situation. The incident reports also provide no

information concerning whether Albino was informed of the grievance procedure. Therefore, in reviewing this motion, we conclude that he was personally unaware of the grievance procedure and he was not expressly informed of the LASD Jail's grievance procedure by the jail.

## B.   Procedural History

Albino filed suit against Los Angeles County, Sheriff Lee Baca ("Baca"), and other John Doe defendants (collectively "Defendants") under 42 U.S.C. § 1983.[2] Albino "allege[d] that his Constitutional rights were violated by Defendants' failure to protect him from other inmates and by Defendants' deliberate indifference to his serious medical needs." In addition, Albino claimed that Baca failed to adequately train and supervise his deputies. Lastly, Albino alleged the state law claims of intentional infliction of emotional distress and gross negligence.

On August 7, 2009, Baca filed a motion for summary judgment. Baca claimed that Albino's lawsuit must be dismissed, because Albino failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Albino did not dispute that he failed to file a written complaint. Instead, Albino argued that the grievance procedure was "unavailable." Specifically, Albino argued that (1) he was never given an orientation by jail staff; (2) he never saw Custody Division Manual § 5-12/010.00, or, if he did, it was not in Spanish and he did not understand what it was; (3) he has never spoken to anyone who has heard of Custody Division Manual § 5-12/010.00; (4) he has never seen or heard of a complaint form; (5) he never noticed any complaint box and no one ever mentioned such a box; and (6) he was locked down to such a degree that he

---

[2]Baca is the only remaining named defendant. The district court granted Defendant's motion to dismiss the County of Los Angeles as a defendant, D.C. Dkt. No. 26, and the magistrate judge denied a motion to add the names of the John Doe defendants. Albino does not appeal these rulings.

never learned of the procedures. In essence, Albino "contend-[ed] that even if a grievance procedure existed, the failure to explicitly inform him of it obviates his need to exhaust," because the failure to inform him of the grievance procedure (even though he never asked) rendered it unavailable.

The magistrate judge agreed with Baca and recommended granting the motion for summary judgment. First, the magistrate judge found "no genuine issue of material fact as to the existence of a grievance procedure at the jail, its accessibility to inmates, or [Albino's] failure to avail himself of it." Specifically, based on the evidence regarding the LASD Jail's grievance procedure, the magistrate judge found that the LASD Jail "had an accessible administrative procedure for seeking redress of grievances at the time of the incidents."

Second, the magistrate judge assumed that Albino was not aware of the grievance procedure and that the jail failed to inform him of such procedure. The magistrate judge noted that the Ninth Circuit has not yet addressed whether an inmate's lack of awareness of a jail's grievance procedure and a jail's failure to inform an inmate together excuse exhaustion. The magistrate judge also noted that "other Circuit Courts of Appeals have held that neither a lack of awareness of available grievance procedures nor a prison's failure to inform an inmate of them excuses his failure to exhaust." The magistrate judge then adopted the out-of-circuit approach. Therefore, the magistrate judge concluded that Albino's "lack of awareness of jail grievance procedures does not excuse his admitted failure to exhaust administrative remedies prior to bringing suit."[3]

---

[3]In the magistrate judge's report and recommendation, the magistrate judge noted that if LASD Jail officials had actively prevented Albino from availing himself of the jail grievance procedure, his failure to exhaust may have been excused. Here, the record does not demonstrate (and the magistrate judge did not find) that Albino was prevented from availing himself of the available procedures.

The district court accepted and adopted the magistrate judge's findings and recommendations in full. Hence, the district court agreed that Albino had failed to exhaust his administrative remedies, because administrative remedies were "available" within the meaning of 42 U.S.C. § 1997e(a), notwithstanding Albino's lack of awareness of the grievance procedure and LASD Jail's failure to inform Albino of such a procedure.

Albino timely filed this appeal.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's decision to grant summary judgment. *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). On summary judgment "[w]e must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (quoting *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 746 (9th Cir. 2003)) (internal quotation marks omitted).

Here, Baca asserted the affirmative defense of nonexhaustion in his answer. Later, he filed a motion for summary judgment, and the magistrate judge reviewed the case under the summary judgment standard. However, this was error. "[W]e have held that the failure to exhaust nonjudicial remedies that are not jurisdictional [such as a prison's grievance procedures] should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003); *accord Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988) (per curiam) ("[F]ailure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."). There-

fore, the magistrate judge should have treated the summary judgment motion as an unenumerated Rule 12(b) motion.[4]

If the magistrate judge had treated the motion for summary judgment as an unenumerated Rule 12(b) motion, then our review of the district court's dismissal based on a failure to exhaust would be de novo under a slightly different standard than in a motion for summary judgment review. *Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010). "[I]n deciding a motion to dismiss for failure to exhaust, a [district] court may 'look beyond the pleadings and decide disputed issues of fact.' " *Id.* (quoting *Wyatt*, 315 F.3d at 1119-20). Thus, unlike our review under a summary judgment standard, the district court's factual findings are reviewed for clear error. *Id.* A district court's factual findings are clearly erroneous if they are illogical, implausible, or without support from inferences that may be drawn from the record. *United States v. Hinkson*, 585 F.3d 1247, 1259-61 (9th Cir. 2009) (en banc).

Notwithstanding the magistrate judge's error, because there are no real factual disputes in this case, the net effect is that the de novo standard is applied effectively the same under either an unenumerated Rule 12(b) motion or a summary judgment motion. In sum, the error does not affect the outcome. *See Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1203 (9th Cir. 1999) ("We may affirm the district court on any basis supported by the record.").

---

[4]Albino argues that the Ninth Circuit rule in *Wyatt* has been abrogated or overruled by *Jones v. Bock*, 549 U.S. 199 (2007), so the district court's decision should be reviewed de novo under a summary judgment standard. However, *Sapp v. Kimbrell* reaffirmed the validity of *Wyatt*. *Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010) ("In deciding a motion to dismiss for failure to exhaust, a court may 'look beyond the pleadings and decide disputed issues of fact.' " (quoting *Wyatt*, 315 F.3d at 1119-20)); *see also Jensen v. Knowles*, 621 F. Supp. 2d 921, 925 (E.D. Cal. 2008) (explaining why *Jones v. Bock* does not alter *Wyatt*). Therefore, *Wyatt* continues to be the law of this Circuit.

## III.   DISCUSSION

### A.   General Requirement of Exhaustion Under the PLRA and Its Purpose

Congress "placed a series of controls on prisoner suits, constraints designed to prevent sportive filings in federal court." *Skinner v. Switzer*, 131 S. Ct. 1289, 1299 (2011). One of these constraints is the mandatory exhaustion of the correctional facilities' administrative remedies. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Exhaustion serves two purposes. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

> First, exhaustion protects administrative agency authority. Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures.

> Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.

*Id.* (internal quotation marks, alteration, and citations omitted).

**[1]** The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Although "the PLRA's exhaus-

tion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute. As explicitly stated in the PLRA, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.' " *Sapp*, 623 F.3d at 822 (quoting 42 U.S.C. § 1997e(a)); *see also Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." (quoting *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008)) (internal quotation mark omitted)). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.' " *Sapp*, 623 F.3d at 822 (citing *Nunez*, 591 F.3d at 1226); *accord Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." (alteration in original)).

## B.  Burden of Proof

Exhaustion, under the PLRA, is an affirmative defense. *Jones*, 549 U.S. at 216. Because exhaustion under the PLRA is an affirmative defense, "[t]he burden of establishing nonexhaustion therefore falls on defendants." *Wyatt*, 315 F.3d at 1112; *accord Brown*, 422 F.3d at 936 ("[D]efendants have the burden of raising and proving the absence of exhaustion.") (quoting *Wyatt*, 315 F.3d at 1119) (internal quotation marks omitted). Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. *See Hilao*, 103 F.3d at 778 n.5; *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable . . . .").

### 1. Defendant Met His Burden of Proving Administrative Remedies Existed and Were Not Followed

A defendant's burden of establishing an inmate's failure to exhaust is very low. *See Brown*, 422 F.3d at 945 (Reinhardt, J., dissenting) ("Given that the mere existence of an additional hearing or process may be sufficient to constitute an available administrative remedy under [Supreme Court precedent], any question as to whether there are in fact other types of available relief is inconsequential."). The exact extent of a defendant's burden of proof is articulated in *Hilao*, 103 F.3d at 778 n.5, and *Brown*, 422 F.3d at 936-37.

In *Hilao*, while interpreting almost identical text as that in the PLRA, we outlined the burden of a defendant when raising the failure to exhaust administrative remedies as an affirmative defense. 103 F.3d at 778 n.5. A defendant need only show the existence of remedies that the plaintiff did not use. *Id.* In *Hilao*, we dealt with the failure to exhaust (affirmative defense) under the Torture Victim Protection Act of 1991 ("TVPA"), 106 Stat. 73, note following 28 U.S.C. § 1350. The TVRA states that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and *available* remedies in the place in which the conduct giving rise to the claim occurred." 28 U.S.C. § 1350, note, § 2(b) (emphasis added). Like the TVRA, the PLRA requires the administrative remedies to be available. We determined that the respondent "has the burden of raising the nonexhaustion of remedies as an affirmative defense and must show that domestic remedies exist that the claimant did not use."[5] *Hilao*, 103 F.3d at 778 n.5 (quoting S. Rep. No. 249 at 9-10).

---

[5]"Once the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Hilao*, 103 F.3d at 778 n.5 (quoting S. Rep. No. 249 at 9-10).

In *Brown*, we stated that, because "there can be no 'absence of exhaustion' unless *some* relief remains 'available,' a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process." 422 F.3d at 936-37. To understand the extent of the defendant's burden to show that the "pertinent relief remained available," we stated that "[r]elevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process." *Id.* at 937. This indicates that a defendant, under the PLRA, must show that some administrative relief existed to meet his or her burden of proof. Thus, for Baca to meet his burden, he must show that (1) a grievance procedure existed and (2) Albino did not exhaust the grievance procedure. *See Hilao*, 103 F.3d at 778 n.5; *Tuckel*, 660 F.3d at 1254 ("Defendants thus bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies.").

**[2]** Baca met his burden. He presented evidence that LASD Jail had a formal grievance procedure through attaching Custody Division Manual § 5-12/010.00, which describes the procedure, and through a declaration of a sheriff's deputy. He provided evidence that inmates could submit written grievances regarding any prison condition, whether or not the inmate utilized the formal Inmate Complaint Forms; that unit commanders were required to ensure that each housing facility had adequate Inmate Complaint Forms available and that inmates had unrestricted access to the forms; and that each housing unit was required to have locked repository boxes accessible to inmates so that inmates could deposit complaints without hindrance, or inmates could give complaints to jail staff. Further, Baca claims that Albino did not submit any written grievance. Importantly, Albino concedes that a grievance procedure existed and that he did not follow the procedure. Thus, Baca has met his burden of showing a grievance procedure existed, and it was not followed.

### 2.   Plaintiff Has Not Met His Burden of Proving that the Administrative Remedies Were Unavailable

Because Baca has met his burden of showing the absence of exhaustion, the burden shifts to Albino to demonstrate that the grievance procedure was unavailable.[6] *See Hilao*, 103 F.3d at 778 n.5 ("Once the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.") (quoting S. Rep. No. 249 at 9-10). Albino argues that he could not have complied with the grievance procedure, because (1) he was unaware of the procedure, (2) the LASD Jail failed to inform him of the procedure, and (3) the jail had no method in place to inform inmates of the procedure. We therefore must determine whether Albino has met his burden of showing that LASD Jail's grievance procedure was "unavailable" (within the meaning of the PLRA) where LASD Jail officials did not inform Albino of the grievance procedure and he was unaware of the existence of the jail's procedure. Because Albino has not shown (1) that jail staff affirmatively interfered with his ability to exhaust administrative remedies or (2) that the remedies were unknowable, he has not met his burden of showing that the jail grievance procedure was "unavailable."

---

[6]*See Tuckel*, 660 F.3d at 1254 ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable . . . ."); *Nunez*, 591 F.3d at 1224 ("Ngo hasn't shown that administrative procedures were unavailable, that prison officials obstructed his attempt to exhaust or that he was prevented from exhausting because procedures for processing grievances weren't followed." (quoting *Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008)) (internal quotation marks omitted)); *Johnson v. Dist. of Columbia, CIV.A.,* No. 11-1445 JEB, 2012 WL 2355577, at *3 (D.D.C. June 21, 2012) ("Once Defendant has shown that Plaintiff failed to exhaust his administrative remedies, the burden shifts to Plaintiff to establish that a failure to exhaust was due to the unavailability of remedies.").

> ### i. Case Law Finding Administrative Remedies Effectively Unavailable Because of Affirmative Acts Preventing or Disrupting Exhaustion

In *Sapp v. Kimbrell*, we determined "that improper screening of an inmate's administrative grievances render[ed] administrative remedies 'effectively unavailable' such that exhaustion [was] not required under the PLRA." 623 F.3d at 823. We found that "[i]f prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." *Id.* We noted that our holding

> promote[d] exhaustion's benefits by removing any incentive prison officials might otherwise have to avoid meaningfully considering inmates' grievances by screening them for improper reasons. Excusing a failure to exhaust when prison officials improperly screen an inmate's administrative appeals helps ensure that prison officials will consider and resolve grievances internally and helps encourage use of administrative proceedings in which a record can be developed that will improve the quality of decision-making in any eventual lawsuit. At the same time, this exception does not alter prisoners' incentive to pursue administrative remedies to the extent possible.

*Id.* While the exception recognized in *Sapp* promotes the purposes of exhaustion, "[t]o fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening." *Id.*

In *Nunez* we determined that Nunez's failure to exhaust his administrative remedies was excused, "because he took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault but

by the Warden's mistake." 591 F.3d at 1224. Nunez took many steps to exhaust his administrative remedies. *Id.* at 1220-22, 1224-25. However, Nunez requested a citation to the law or regulation under which the conduct at issue was authorized, and the warden mistakenly provided the wrong citation. *Id.* at 1220. Because of the erroneous citation, Nunez ultimately failed to properly follow the grievance procedures. *Id.* at 1221-23. Importantly, we did not excuse exhaustion, because "Nunez could not obtain information that he subjectively believed would be useful in preparing his appeal." *Id.* at 1225 (quoting the dissent) (internal quotation marks omitted). Instead, we held "that exhaustion [was] excused because Nunez could not [have] reasonably be[en] expected to exhaust his administrative remedies without the Program Statement that the Warden claimed to mandate the strip search, and because Nunez timely took reasonable and appropriate steps to obtain it." *Id.* "Nunez believed in good faith that [the erroneous] Program Statement . . . was necessary, not merely useful, for preparing his appeal. He could hardly believe otherwise once the Warden told him that the challenged strip search was authorized by that Program Statement." *Id.* "[H]e was finally told . . . that the Program Statement . . . did not relate to strip searches. But up until that time, Nunez reasonably believed, based on the Warden's written response . . . that he needed to see [the] Program Statement . . . before he could prepare an effective appeal." *Id.* at 1226. Even though the Warden's mistake was innocent, "the mistake led Nunez on an almost ten-month wild goose chase." *Id.* "[H]aving done everything he could do to obtain a document that the Warden had led him to believe he needed, [Nunez] promptly filed his [grievance form]. Rational inmates cannot be expected to use grievance procedures to achieve the procedures' purpose when they are misled into believing they must" perform an impossible action "in order to effectively pursue their administrative remedies . . . ." *Id.*

**[3]** *Sapp* and *Nunez* are not controlling for this issue. In those cases, we determined that affirmative actions by jail

staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable.[7] Here, there is no evidence that any jail official engaged in any misconduct that prohibited Albino from learning of or following the grievance procedure. The jail officials did not state that there were no available remedies. *See Brown*, 422 F.3d at 946 (Reinhardt, J., dissenting) ("[R]elief would be unavailable . . . when the prisoner is explicitly told, or the regulations make it plain, that there is *no* further relief available to him."). Unlike *Nunez*, LASD Jail officials did nothing to direct Albino in a direction that would cause him not to exhaust his remedies. Further, unlike *Sapp*, there is no evidence that LASD Jail staff improperly handled a complaint by Albino, because Albino never attempted to file a written complaint. In sum, *Sapp* and *Nunez* are inapplicable here, because there is no evidence that the LASD officials took any action to delay or thwart Albino's efforts to utilize or exhaust its grievance procedure.[8]

---

[7]Our sister circuits also hold that exhaustion is not required when affirmative actions of prison officials make administrative remedies effectively unavailable. *Sapp*, 623 F.3d at 822-23 (compiling cases); *Nunez*, 591 F.3d at 1224 (same). For example, according to our sister circuits, exhaustion is excused when prison officials refuse to provide the required grievance forms upon request or ignore such a request. *See, e.g.*, *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 738, 740 (8th Cir. 2001). Similarly, exhaustion is excused when prison officials fail to respond to a properly filed grievance. *Dole v. Chandler*, 438 F.3d 804, 809, 811 (7th Cir. 2006). Exhaustion is also excused when prison staff erroneously informs the inmate that he must await the termination of an investigation before filing a grievance. *Brown v. Croak*, 312 F.3d 109, 111-12 (3d Cir. 2002). Lastly, threats of retaliation for filing a grievance excuse exhaustion. *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008); *Macias v. Zenk*, 495 F.3d 37, 45 (2d Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 685-86 (7th Cir. 2006).

[8]The dissent would conclude that the deputies' failure to inform Albino of the jail's grievance procedures after he complained orally constitutes a "mistake" by the jail that prevented Albino from exhausting his claims. There is no precedent for this premise and the dissent cites none. In *Sapp* and *Nunez*, it was the jails' own conduct, even if accidental, that prevented

Albino argues that deputies affirmatively acted to mislead him about the grievance procedure, because deputies told Albino to contact his attorney for help. However, no evidence suggests that he contacted his public defender about his classification or about protective custody. We presume that the public defender would have advised him of the grievance procedure process and how to comply. Instead of making the jail's grievance procedure unavailable, like providing the wrong regulation citation in *Nunez*, telling Albino to contact his attorney actually led Albino in the direction of learning of the grievance procedure and how to comply. The statement did not prevent Albino from discovering or complying with the grievance procedure. Lastly, our decision should not, by determining that they erred here, discourage custodians from advising detainees to speak with their lawyers should the detainees have concerns about the conditions of their confinement.

> ii.   *Subjective Lack of Awareness Does Not Make an Administrative Remedy Unavailable When the Remedy is Knowable*

**[4]** Albino has the burden to show that the grievance procedure was unavailable based on his unawareness of the grievance procedure and the LASD Jail's failure to inform him of the procedure. We hold that he has failed to meet his burden.

**[5]** In *Hilao*, because we held that the defense must only show that administrative remedies were available and unused,

---

the detainees from exhausting their remedies. The dissent's view would dramatically extend those cases by allowing a detainee to, in essence, trigger a "mistake" that will then place the burden on the jail to assure that a prisoner is subjectively aware of grievance procedures. However, the defense has already met its burden under our precedent by evidencing the existence of administrative remedies. *See Brown*, 422 F.3d at 936-37. Albino has failed to meet his burden to show that the remedies were unavailable.

it follows that an inmate's subjective unawareness of an administrative remedy and a prison's failure to expressly inform the inmate of the remedy are not alone sufficient to excuse exhaustion. *See* 103 F.3d at 778 n.5. We have previously required a good-faith effort on the part of inmates to exhaust a prison's administrative remedies as a prerequisite to finding remedies effectively unavailable. *See Sapp*, 623 F.3d at 823; ("[A] prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening."); *Nunez*, 591 F.3d at 1224 ("[Nunez] took reasonable and appropriate steps to exhaust his Fourth Amendment claim and was precluded from exhausting . . . ."). This principle logically extends to the current situation to obligate an inmate to make reasonable, good-faith efforts to discover the appropriate procedure for complaining about prison conditions before unawareness may possibly make a procedure unavailable.

Other circuits have addressed this issue. The Second Circuit has articulated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Similarly, the Eleventh Circuit, in *Goebert v. Lee County*, applied an objective standard. 510 F.3d at 1322-24. An objective standard is consistent with how we have articulated the test regarding whether administrative remedies are unavailable in terms of whether "[r]ational inmates can[ ] be expected to use [the] grievance procedures . . . ." *See Nunez*, 591 F.3d at 1226.

*Goebert* is of particular importance because it involved an inmate's unawareness of the administrative procedure. In *Goebert*, Goebert did not know and could not have found out that she could or should have appealed a denial of her administrative complaint. 510 F.3d at 1322. The parties agreed (1) that the Inmate Handbook contained "nothing . . . about any

procedure for appealing the denial of a complaint" and (2) that, although the appeal procedure was laid out in the jail's General Operating Procedures, "no inmate was ever permitted to see those procedures . . . ." *Id.* Thus, there was nothing in the record leading a reasonable inmate to believe there was an appeal procedure or indicating that an inmate could have discovered the appeal procedure upon a reasonable effort. *See id.* Under these circumstances, *Goebert* held that the failure to exhaust is excused when an inmate does not know of the grievance procedure and could not have reasonably discovered the procedure. *Id.* at 1322-24; *see also Bryant v. Rich*, 530 F.3d 1368, 1373 n.6 (11th Cir. 2008) ("We have said that an administrative remedy is not 'available' if it is unknown and unknowable to the inmate." (citing *Goebert*, 510 F.3d at 1323)). Simply put, "[t]hat which is unknown and unknowable is unavailable; it is not 'capable of use for the accomplishment of a purpose.' " *Goebert*, 510 F.3d at 1323 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Applying its test to the facts in *Goebert*, the Eleventh Circuit held that the grievance procedures were not "available," because Goebert was unaware of the appeal procedures and could not have discovered them through reasonable effort. *Id.* at 1322-23. The Eleventh Circuit articulated its objective standard in the context of an inmate lacking knowledge of the grievance procedure.

Other out-of-circuit cases support an "unknowable," objective standard by rejecting an inmate's subjective unawareness alone as sufficient to make a prison's administrative procedure unavailable. For example, in *Chelette v. Harris*, the Eighth Circuit held that the inmate failed to exhaust his administrative remedies even though the warden had "stated he would take care of the matter." 229 F.3d 684, 686 (8th Cir. 2000). The Eighth Circuit rejected the district court's finding that the inmate "could logically have believed that he had exhausted such administrative remedies as were available to him . . . ." *Id.* at 688. It stated:

> If it is "likely" that Chelette could have filed a griev-
> ance over the alleged lack of medical care, it can
> hardly be said that he exhausted such administrative
> remedies as were available to him. Section 1997e(a)
> says nothing about a prisoner's subjective beliefs,
> logical or otherwise, about the administrative reme-
> dies that might be available to him. The statute's
> requirements are clear: If administrative remedies
> are available, the prisoner must exhaust them.

*Id.* Admittedly *Chelette* is distinguishable from the present case, because the inmate knew about the grievance procedures but chose not to pursue them given the warden's representa-tion. Nevertheless, *Chelette* is instructive because of the court's holding that the prisoner's subjective belief was not determinative of whether a grievance procedure was "unavail-able."

Construing *Chelette*, several circuit courts of appeal and district courts have concluded that a plaintiff's lack of knowl-edge of the administrative procedures does not make those procedures unavailable. *E.g.*, *Twitty v. McCoskey*, 226 F. App'x 595, 595-96 (7th Cir. 2007) (unpublished) (rejecting inmate's argument that his failure to exhaust should have been excused, because he was unaware of the procedure and the prison failed to inform him of it); *Brock v. Kenton Cnty.*, 93 F. App'x 793 (6th Cir. 2004) (unpublished) (the Sixth Cir-cuit has rejected an inmate's argument that exhaustion was unavailable to him because he was unaware of the system); *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 273 (10th Cir. 2003) (unpublished) ("Thus, even accepting plaintiff's allega-tion that he was unaware of the grievance procedures, there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement."); *Johnson*, 2012 WL 2355577, at *6 ("While th[e D.C.] Circuit has not yet weighed in on the issue, the majority of courts to have done so have held that an inmate's subjective lack of information about his administrative remedies does not excuse a failure to

exhaust."). None of the plaintiffs in the foregoing cases challenged the existence of the procedure nor did any of the plaintiffs suggest that they could not have discovered the administrative procedure through reasonable effort. In short, the plaintiffs' ignorance of the administrative remedies alone did not excuse exhaustion. *Cf. Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing."); *Cooper v. Bell*, 628 F.2d 1208, 1212 n.6 (9th Cir. 1980) ("mere ignorance of one's legal rights does not justify extension of a filing period"), *overruled on other grounds as recognized in Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1174 (9th Cir. 1986)); *Marrero Morales v. Bull Steamship Co.*, 279 F.2d 299, 301 (1st Cir. 1960) ("[M]any cases have held that ignorance of one's legal rights does not excuse a failure to institute suit."). Furthermore, a prison's failure to inform an inmate of its grievance procedure does not automatically make a grievance procedure unavailable. *See Hilao*, 103 F.3d at 778 n.5; *Yousef v. Reno*, 254 F.3d 1214, 1221 (10th Cir. 2001) (holding that the Assistant Attorney General ("AAG") had no duty to inform the prisoner of the prison's formal grievance procedures when the AAG responded to an inmate's informal complaint).

**[6]** Therefore, for an inmate to claim that a prison's grievance procedure was effectively unavailable due to the inmate's unawareness of the procedure, the inmate must show that the procedure was not known and unknowable with reasonable effort. Such a standard mitigates the concern raised in *Goebert* that jails and prisons should not be allowed "to play hide-and-seek with administrative remedies," *Goebert*, 510 F.3d at 1323, because Albino has failed to show that LASD Jail hid the procedure and failed to show that Albino could not discover it if he would have sought to pursue it. Further, the standard is consistent with the ordinary meaning of "available." *See Hilao*, 103 F.3d at 778 n.5 (indicating that an existing administrative remedy is available unless it is somehow "ineffective, unobtainable, unduly prolonged, inadequate, or

obviously futile"); *cf. Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1706 (2012) (reading the word "individual" based on its natural, ordinary meaning); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (internal quotation marks omitted)). The definition of "available" is "capable of use for the accomplishment of a purpose," and that which "is accessible or may be obtained." *Booth*, 532 U.S. at 737 (quoting Webster's Third New International Dictionary 150 (1993)) (internal quotation marks omitted). With these considerations in mind we explain why Albino fails to meet his burden of proof.

**[7]** To meet his burden of proving the unavailability of the grievance procedure, Albino submitted his declaration. However, Albino's assertions in his declaration alone do not meet his burden of proof, because the assertions simply prove that Albino was subjectively unaware of the grievance procedure.

**[8]** Here, while Albino claims ignorance of LASD Jail's grievance procedure, the LASD Jail had a formal grievance procedure that was accessible and such facts were undisputed. The grievance procedure was accessible for a number of reasons: (1) the procedure was outlined in Custody Division Manual § 5-12/010.00; (2) inmates could submit written grievances regarding any prison condition, whether or not the inmate utilized the formal Inmate Complaint Forms; (3) unit commanders were required to ensure that each housing facility had adequate Inmate Complaint Forms available and that inmates had unrestricted access to the forms; and (4) each housing unit was required to have locked repository boxes accessible to inmates so that inmates could deposit complaints without hindrance, or inmates could give complaints to jail staff. The magistrate judge also found no genuine issue of material fact that the LASD Jail's grievance procedure was accessible, and thus, by inference, knowledge of the grievance

procedure could have been obtained. Therefore, simply because Albino was unaware of the grievance procedure does not mean that the procedure was unknowable.

Anticipating the problem that subjective unawareness would not be enough, Albino contends that his subjective unawareness was objectively reasonable, because he says the jail had no formal method for informing the inmates of the grievance procedure.[9] Notwithstanding, Albino's declaration only proves that he was subjectively unaware of the grievance procedures and does not support his theory that his unawareness was objectively reasonable. He provides no evidence to show that he could not have discovered the grievance procedure with reasonable effort.

For example, he asserts that (1) he never had an orientation; (2) he never saw the Custody Division Manual § 5-12/010.00, or if he did, it was not in Spanish; (3) he has never spoken to an inmate aware of § 5-12/010.00; and (4) he had never seen or heard of a complaint box. Each of these assertions only shows Albino's lack of subjective awareness. Unlike *Goebert*, where the inmate could not have discovered the procedure with reasonable effort because the inmate handbook did not explain the procedure, 510 F.3d at 1323, Albino does not show that he was foreclosed from discovering the procedure with reasonable effort. In *Goebert*, the parties agreed that the inmate manual did not describe the procedure at issue and that the jail never permitted inmates to see the General Operating Procedures manual that actually did describe the procedure. *Id.* at 1322. Here, Albino fails to dispute that the Custody Division Manual described the grievance procedure in § 5-12/010.00, that jail policies required every housing unit to

---

[9]On summary judgment, Baca may have been at a disadvantage as to this argument. If he would have presented evidence of a method of informing inmates, this would have created an issue of material fact and could have derailed Baca's chances of winning on summary judgment. In any event the record is silent on this point.

have an adequate supply of Inmate Complaint Forms, or that locked grievance repositories existed in each housing unit. Albino fails to satisfy his burden of showing why these facts do not indicate that an inmate could have discovered the LASD Jail's grievance procedure with reasonable effort.[10]

**[9]** Furthermore, there is no evidence in the record that Albino would not have been able to discover the grievance procedure. Instead, the record indicates that (with some effort) he likely could have become aware of the grievance procedure. As counsel for defendant aptly noted in oral argument, this case boils down to an inmate that alleges "I didn't see" rather than "I looked and couldn't find" and "no one told me" rather than "I asked and wasn't told or was told misinformation."

Although on summary judgment the jail has not offered evidence of a proscribed method for informing inmates of the procedure, this was not the jail's burden. Moreover, a subjective lack of awareness, without (a) some affirmative actions preventing discovery or (b) objective circumstances showing that efforts to discover would be fruitless, does nothing to suggest that the procedure was unavailable when "available" is defined as "accessible or may be obtained." This is consistent with *Goebert*'s articulated rule that "[t]hat which is unknown and unknowable is unavailable." 510 F.3d at 1323. It is also consistent with *Nunez* and *Sapp*, because in those

---

[10]The dissent asks what more Albino should have done. Though the question seems rhetorical, the answer supports our conclusion. Albino should have followed the procedures outlined in Custody Division Manual § 5-12/010.00. He should have taken advantage of the complaint boxes that were accessible to him. Instead, Albino has not met his burden to show that he took *any* of the steps that were reasonably available to him as a detainee. Thus, Albino fails to demonstrate that the grievance procedure was objectively unknowable (and, therefore, the remedy unavailable). Accordingly, while the dissent raises the issue of what more Albino could have done, this case resolves on the burden that Albino failed to carry by alleging no more than "I didn't know."

cases the inmates made reasonable, good faith efforts to comply with the grievance procedures and affirmative actions impeded their exhaustion, making access to or the ability to obtain the grievance procedures unreasonable.

**[10]** Lastly, Albino's evidence regarding his oral complaints does not overcome his failure to meet his burden of proof. Although he orally complained, Albino never attempted to make a written complaint to any jail official or staff member. The jail's grievance procedure, as articulated in Custody Division Manual § 5-12/010.00, does not indicate that any action should be taken with regard to oral complaints. This seems especially relevant, because the jail processed Albino and calculated an appropriate custody and security level classification (based on a number of factors) that indicated that Albino should be housed with the general population. Further, Albino's oral complaints did not put the jail on some sort of constructive notice that would excuse exhaustion. *Cf. Macias*, 495 F.3d at 43-44 (holding that, even if informal complaints and administrative tort claims put the prison on notice of the grievance, that does not satisfy the requirement to procedurally exhaust; further, notice alone is insufficient because the benefits of exhaustion can be realized only if the prison grievance system is followed).

## IV.  CONCLUSION

**[11]** Because Albino has failed to meet his burden of showing that the LASD Jail's grievance procedure was unavailable, we **AFFIRM** the district court.

GILMAN, Circuit Judge, dissenting:

I agree with the majority that an inmate must do more than simply claim that he was unaware of the jail's grievance procedure in order to show that administrative remedies were unavailable to him under the PLRA's exhaustion requirement. In the present case, however, Albino orally complained on several occasions to deputies at the jail about being raped and brutally assaulted by his fellow inmates, and about the jail's failure to transfer him to protective custody following each assault. I believe that Albino's actions were sufficient to trigger an obligation on the part of the jail to notify him of the existence of its grievance procedure. Because the jail in this case instead "stonewalled" Albino by not advising him of the procedures necessary for him to seek redress for his complaints, I would hold that Albino has demonstrated that the administrative remedies were effectively unavailable to him and that he has therefore satisfied the PLRA's exhaustion requirement. For this reason, I respectfully dissent.

I begin with what I believe is common ground between my view and the majority's view regarding when a jail's remedy is unavailable for purposes of the PLRA's exhaustion requirement. As stated above, I agree with the majority that an inmate's unawareness of the jail's grievance procedure, on its own, is insufficient to make that procedure effectively unavailable to him. Otherwise, courts would constantly have to "inquir[e] into an individual inmate's knowledge of the grievance process"—"a time-consuming task fraught with uncertainty, as any inmate could create a triable issue of fact merely by averring he did not know of the process." *Johnson v. District of Columbia*, ___ F. Supp. 2d ___, 2012 WL 2355577, at *8 (D.D.C. June 21, 2012) (brackets, citation, and internal quotation marks omitted). Such a rule would encourage the ignorance of (rather than the use of) administrative remedies and would clog the courts, thereby thwarting the purposes underlying the exhaustion requirement. *Cf. Arnold v. Goetz*, 245 F. Supp. 2d 527, 537 (S.D.N.Y. 2003) (noting that

"an inmate may not close his eyes to what he reasonably should have known") (internal quotation marks omitted)).

I also agree with the majority that, at the other end of the spectrum, "affirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable." (Maj. Op. at 11693-94) Were this not the rule, a jail would be able to "have it both ways": it could "obstruct an inmate's pursuit of administrative exhaustion on the one hand and then claim the inmate did not properly exhaust these remedies on the other." *Goetz*, 245 F. Supp. 2d at 537. This outcome is antithetical to the notion of due process.

What makes the present case a close one is that it falls in between these two extremes. Albino is not alleging that the Los Angeles County Jail affirmatively interfered with his ability to exhaust his administrative remedies. But he is alleging a good bit more than subjective unawareness. His claim is that the jail had no policy of informing its inmates about its grievance procedure, that a typical inmate such as himself would have no clear basis to discover the procedure's existence, and that he repeatedly made efforts to grieve by orally notifying the sheriff's deputies of his complaint and his desire to be placed in protective custody. This brings us to the two critical questions: (1) what should the rule be under such circumstances, and (2) how should that rule be applied to the facts of this case?

With respect to the first question, the majority holds that, when a jail has in place a procedure for complaining about the conditions of confinement, an inmate must "make reasonable, good-faith efforts to discover [that procedure] before unawareness may possibly make [it] unavailable." (Maj. Op. at 11696; *see also id.* at 11699 ("Therefore, for an inmate to claim that a prison's grievance procedure was effectively unavailable due to the inmate's unawareness of the procedure, the inmate must show that the procedure was not known and

[was] unknowable with reasonable effort."")) I will not quibble with this formulation of the proper rule. As set forth by the majority, the rule is consistent with that adopted by the Eleventh Circuit, which held that the phrase "such remedies as are available" does not include "remedies or requirements for remedies that an inmate does not know about, and cannot discover through reasonable effort, by the time they are needed." *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322 (11th Cir. 2007).

Where I part ways with the majority is on the second question—whether, in construing the facts in the light most favorable to him, Albino actually made a reasonable, good-faith effort to discover the jail's grievance procedure. In answering this question in the negative, the majority first concludes that "[t]he grievance procedure was accessible" because

> (1) the procedure was outlined in Custody Division Manual § 5-12/010.00; (2) inmates could submit written grievances regarding any prison condition, whether or not the inmate utilized the formal Inmate Complaint Forms; (3) unit commanders were required to ensure that each housing facility had adequate Inmate Complaint Forms available and that inmates had unrestricted access to the forms; and (4) each housing unit was required to have locked repository boxes accessible to inmates so that inmates could deposit complaints without hindrance, or inmates could give complaints to jail staff.

(Maj. Op. at 11700 (citations omitted))

The majority is certainly right that these facts demonstrate that a grievance procedure actually existed. (*See* Maj. Op. at 11690) But that is all they show. The enumerated facts tell us nothing about whether an inmate such as Albino could have reasonably discovered that the procedure existed and was

available to him. There is simply no evidence that inmates received copies of the Custody Division Manual or were otherwise made aware of the grievance procedure. Nor is there any evidence that the locked repository boxes or grievance forms were noticeable to or identifiable by the inmates (even if the inmates technically had access to both).

Yet the majority ultimately concludes that Albino has "provide[d] no evidence to show that he could not have discovered the grievance procedure with reasonable effort." (Maj. Op. at 11701) In support of this conclusion, the majority contrasts the facts of Albino's case with the facts of *Goebert*, in which the Eleventh Circuit held that the inmate *had met* her burden of showing that the administrative remedies were not available with reasonable effort.

I am puzzled by the majority's reliance on *Goebert*. That case involved an inmate who failed to file an appeal of an adverse administrative response to her complaint, as required under the jail's grievance procedure. The court excused her failure because, as the majority here points out, "the parties agreed that the inmate manual did not describe the procedure at issue and that the jail never permitted inmates to see the General Operating Procedures manual that actually did describe the procedure." (Maj. Op. at 11701) On these facts, as even the majority acknowledges, "there was nothing in the record leading a reasonable inmate to believe there was an appeal procedure or indicating that an inmate could have discovered the appeal procedure upon a reasonable effort." (Maj. Op. at 11697)

In attempting to distinguish *Goebert* from the present case, the majority recites the previously mentioned facts, reasoning that "Albino fails to dispute that the Custody Division Manual described the grievance procedure in § 5-12/010.00, that jail policies required every housing unit to have an adequate supply of Inmate Complaint Forms, or that locked grievance repositories existed in each housing unit." (Maj. Op. at

11701-02) But again, these facts show only that the grievance procedure *exists*. They do not suggest that Albino should have been aware of the procedure any more than the existence of the appellate procedure in *Goebert* suggested that Goebert should have been aware of it.

To the contrary, when the facts are construed in the light most favorable to Albino, they show that he persistently complained to deputies at the jail about his repeated assaults and about the jail's failure to transfer him to protective custody following each assault. Not once, however, was he ever told that he could submit a written complaint in one of the locked boxes apparently located in each housing unit.

The majority disregards these complaints because they were made orally as opposed to in writing, the latter being required by the jail's grievance procedure. But Albino had not been made aware of this procedure and had not received a copy of the Custody Division Manual. In my opinion, these facts satisfy the "good-faith effort" standard announced by the majority and should have triggered on the part of the jail an obligation to alert Albino to the existence of the jail's grievance procedure.

Instead, the deputies at various times (a) did nothing, (b) disclosed the nature of his charges to the other inmates (which precipitated the assaults), and (c) told him that only his attorney could help him. Albino deserved better. Under the circumstances, his repeated attempts to inform the deputies of his complaints should be considered "reasonable and appropriate steps to exhaust his . . . claim[s]." *Cf. Nunez v. Duncan*, 591 F.3d 1217, 1224, 1226 (9th Cir. 2010) (holding that exhaustion is satisfied when the prisoner "took reasonable and appropriate steps to exhaust his . . . . claim and was precluded from exhausting, not through his own fault but by the Warden's mistake," or by the Warden's "bad faith or deliberate obstruction"). I believe that the deputies' silence in the face

of Albino's complaints constitutes a "mistake" by the jail that precluded Albino from exhausting his claims.

As the Eleventh Circuit in *Goebert* explained:

> That which is unknown and unknowable is unavailable; it is not "capable of use for the accomplishment of a purpose." *Booth [v. Churner]*, 532 U.S. [731,] 738 [(2001)]. If we allowed jails and prisons to play hide-and-seek with administrative remedies, they could keep all remedies under wraps until after a lawsuit is filed and then uncover them and proclaim that the remedies were available all along. The Queen [of Hearts in *Alice's Adventures in Wonderland*] would be proud.

*Goebert*, 510 F.3d at 1323. This policy concern should apply with equal force here.

In sum, although the majority adopts a rule that is formally consistent with *Goebert*, the majority's application of that rule is anything but. I am frankly at a loss to determine what the majority thinks would have constituted a "good-faith effort" to discover the grievance procedure in this case. Put more simply: What more should Albino have done? In my view, once an inmate engages in a sincere effort to complain about the conditions of his confinement to someone with authority at the jail, that assertion should trigger on the part of the jail an obligation to inform the inmate about the proper procedure to pursue his complaint. Because the jail in this case "kept [Albino] in the dark about the path [he] was required to follow," *see id.*, I would reverse the judgment of the district court in favor of the sheriff.